## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Grinnell Mutual Reinsurance Co.,

       Plaintiff,

             Civ. No. 10-350 (RHK/LIB)
             **MEMORANDUM OPINION**
             **AND ORDER**

v.

Wollak Construction, Inc., Ernie Wollak,
Ronald Duran, and Debra Goodrich-Duran,

       Defendants.

---

Michelle M. Carter, Arthur Chapman Kettering Smetak & Pikala, PA, Minneapolis, Minnesota, for Plaintiff.

Neil C. Franz, Neils-Franz-Chirhart, Attorneys at Law, Saint Cloud, Minnesota, for Defendants.

---

## INTRODUCTION

In this insurance-coverage dispute, Plaintiff Grinnell Mutual Reinsurance Co. ("Grinnell") seeks a declaration that it has no duty to defend or indemnify Defendant Wollak Construction, Inc. ("Wollak") in an underlying state-court lawsuit brought by Ronald Duran and Debra Goodrich-Duran (the "Durans").[1] The underlying lawsuit arose from a home-construction contract between Wollak and the Durans. Grinnell now moves for summary judgment, arguing that it has no duty to defend Wollak under its

---

[1] Grinnell has named as Defendants Wollak Construction, Inc., Ernie Wollak, Ronald Duran, and Debra Goodrich-Duran. Because the coverage question turns on the insurance policy between Grinnell and Wollak Construction and the actions of Wollak Construction, the Court refers to Defendants as "Wollak" throughout.

commercial general liability ("CGL") policy (the "Policy") because an exclusion in the Policy bars coverage for the damage the Durans allege. For the reasons set forth below, the Court will grant the Motion.

## BACKGROUND

The material facts are not in dispute. The Durans hired Wollak in 2006 to build a home on a lot they owned. In 2008, after construction of the home was completed, the Durans sued Wollak in state court, claiming that it committed breach of contract, breach of statutory warranty, breach of implied warranty, and negligence in its construction of their home. (Ruwe Aff. Ex. A.) They identified various building code violations and other construction defects. (Id. ¶ 10.) Specifically, the underlying complaint alleges that Wollak:

> (a) [failed] to []properly install windows, trim, hinges, flooring, heating, doors, shower stalls and doors pursuant to the installation instructions of the manufacturer and good building practice, [and] (b) failed to properly mark property lines, failed to fill in sink []holes, painting, failed to properly pour concrete for patio, and failed to remove the silt fence.

(Id. ¶ 9.)

Wollak was insured under Grinnell's CGL Policy at all relevant times. (Id. Ex. C.) The Policy provides that Grinnell will "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage'[2] to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking

---

[2] The Policy defines "property damage" as: "(a) Physical injury to tangible property, including all resulting loss of use of that property . . . or (b) Loss of use of tangible property that is not physically injured . . ." (Ruwe Aff. Ex. C CGL Form § V(17).) For present purposes, Grinnell assumes, without conceding, that the damage at issue meets this definition. (Mem. in Supp. 7.)

2

those damages." (Id. Ex. C CGL Form § I(1)(a).) The Policy also contains numerous exclusions, identifying types of damage to which the insurance coverage does not apply. At issue for purposes of this Motion is one of these exclusions.

Exclusion (*l*) of the Policy excludes coverage for "damage to your work." This so-called "your-work" exclusion provides:

> This insurance does not apply to:
> (*l*) "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard."[3]
>> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(Id. § I(2)(*l*).) An endorsement modified this exclusion by removing the second sentence. (Id. Endorsement CG 22 94 10 01.) Thus, the "your-work" exclusion no longer contains an exception for work performed by subcontractors. In all other respects, it remains unchanged. Additionally, the Policy defines "your work" as follows:

> Your work:
> (a) Means:
>> (1) Work or operations performed by you or on your behalf, and
>> (2) Materials, parts or equipment furnished in connection with such work or operations.
> (b) Includes:
>> (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

---

[3] The "products-completed operations hazard" is defined to include property damage arising out of the insured's product or work except for:"(1) Products still in [the insured's] physical possession; or (2) Work that has not yet been completed or has been abandoned." (Ruwe Aff. Ex. C CGL Form § V(16)(a).) The definition also specifies that "work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed." (Id.) There is no dispute here that Wollak's work was completed and the property damage at issue was included in the "products completed operations hazard."

3

> (2) The providing of or failure to provide warnings or instructions.

(Id. § V(22)(a).) The endorsement did not modify this definition.

Grinnell initially accepted Wollak's tender of defense when the Durans brought their underlying lawsuit, but it reserved its rights under the Policy. (Id. Ex. B.) It now seeks a declaration that it has no duty to defend or indemnify Wollak in relation to the Durans' lawsuit under the terms of the Policy.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

State law governs the interpretation of insurance policies. Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc., 346 F.3d 1160, 1164 (8th Cir. 2003). Under Minnesota law, interpreting an insurance policy is a question of law for the Court. Watson v. United Servs. Auto. Ass'n, 566 N.W.2d 683, 688 (Minn. 1997). When policy language is unambiguous, it is interpreted "in accordance with its plain and ordinary meaning." Ill. Farmers Ins. Co. v. Glass Serv. Co., 683 N.W.2d 792, 799 (Minn. 2004). When an insurance policy's language is ambiguous, however, the Court will generally construe that language against the drafter (the insurer) and in favor of the insured. Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co., 615 N.W.2d 341, 344 (Minn. 2000). Furthermore, when an insurer argues that an exclusion bars coverage, the burden is on the insurer to establish that the exclusion applies. SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 311–14 (Minn. 1995).

Grinnell asks the Court to find as a matter of law that the Policy's "your-work" exclusion bars coverage here because Wollak's work is all that is at issue in the underlying action. In the Court's view, the damages the Durans allege are precisely what the "your-work" exclusion is intended to remove from coverage.

Exclusions in CGL policies for damage to, or arising out of, an insured's own work are not unusual. A "your-work" exclusion, like the one at issue here, is consistent with the business-risk doctrine and underlying public-policy concerns long recognized by Minnesota courts. As the Minnesota Supreme Court has explained:

> If insurance proceeds could be used to pay for the repairing and/or replacing of poorly constructed products, a contractor or subcontractor could receive initial payment for its work and then receive subsequent payment from the insurance company to repair or replace it . . . . Equally repugnant on policy grounds is the notion that the presence of insurance obviates the obligation to perform the job initially and in a workmanlike manner.

Knutson Const. Co. v. St. Paul Fire & Marine Ins. Co., 396 N.W.2d 229, 235 (Minn. 1986) (citations omitted). Essentially, there are two distinct types of risk at play in CGL coverage of construction companies: the risk of faulty performance with the resulting costs of repairing or replacing defective work, and the risk of accidental injuries or property damage caused by faulty work. See Bor-Son Bldg. Corp. v. Emp'rs Commercial Union Ins. Co. of Am., 323 N.W.2d 58, 64 (Minn. 1982) (citation omitted). The first type is a business risk that should be borne by the insured, not shifted onto an insurance company. See Knutson, 396 N.W.2d at 235; Bor-Son, 323 N.W.2d at 64; Web Constr., Inc. v. Cincinnati Ins. Co., No. 06-5061, 2007 WL 4230751, at *5–6 (D. Minn. Nov. 29, 2007) (Kyle, J.) (quoting Knutson and Bor-Son to explain the business-risk doctrine).[4]

---

[4] The Minnesota Supreme Court has cautioned that coverage of business risks in a CGL policy must be determined "by the specific terms of the contract" rather than by judicially-recognized doctrines. Wanzek Constr., Inc. v. Emp'rs Ins. of Wasau, 679 N.W.2d 322, 327 (Minn. 2004); accord Corn Plus Cooperative v. Cont'l Cas. Co., 444 F. Supp. 2d 981, 989 n.5 (D. Minn. 2006) (Doty, J.). However, the business-risk doctrine has previously been applied to specific insurance-policy language. See O'Shaughnessy v. Smuckler Corp., 543 N.W.2d 99, 104–05 (Minn. Ct. App. 1996), abrogated on other grounds by Gordon v. Microsoft Corp., 645 N.W.3d 393 (Minn. 2002); accord Wanzek Constr., Inc. v. Emp'rs Ins. of Wasau, 667 N.W.2d 473, 478 (Minn. Ct. App. 2003). Moreover, the language of the "your-work" exclusion at issue here is similar to policy language in the cases that first adopted the business-risk doctrine. In the Court's view, understanding the doctrine and its underlying policies is useful here, and it simply bolsters the Court's interpretation of the "your-work" exclusion.

CGL policies have long contained exclusions reflecting this division of risk, and Minnesota courts have consistently interpreted them to bar coverage for the types of damage alleged here. Prior to 1986, standard CGL policies excluded coverage for "property damage to the work performed by the Named Insured arising out of the work or any portion thereof." See, e.g., Knutson, 396 N.W.2d at 233. This was called the "work-performed" exclusion; it was replaced by the "your-work" exclusion language in 1986. See Web Constr. Inc., 2007 WL 4230751, at *6 (comparing the policies at issue in Bor-Son and Knutson to the modern "your work" exclusion). The Minnesota Supreme Court interpreted the "work-performed" exclusion to bar coverage for "claims of defective materials and workmanship giving rise to a claim for damage to the property itself which is the subject matter of the construction project." Knutson, 396 N.W.2d at 236. Accordingly, there was no coverage for breach of contract, negligence, and breach of warranty claims based on faulty workmanship, defective materials, and failure to follow project specifications in a case involving the construction of a large apartment complex. Id. at 236 (applying the business-risk doctrine).

When the "work-performed" exclusion was replaced by the "your-work" exclusion, it added an exception to the exclusion for subcontractors' work, which effectively narrowed the business-risk doctrine. See O'Shaughnessy v. Smuckler Corp., 543 N.W.2d 99, 103–04 (Minn. Ct. App. 1996). However, where subcontractors were not involved, the exclusion remained the same. See id. at 102 ("[W]e conclude that the [subcontractor exception] was intended to narrow the business risk doctrine . . . . Under our holding in the current language of the policy, the business risk doctrine would still

apply to work performed by the general contractor."). The "your-work" exclusion continued to bar coverage for damage to the insured's work, including the costs to repair or replace defective work. See, e.g., Corn Plus Cooperative v. Cont'l Cas. Co., 444 F. Supp. 2d 981, 989 (D. Minn. 2006) (Doty, J.) (interpreting the "your-work" exclusion to bar coverage for faulty welding work on an ethanol plant since the welds were the insured's work).[5]

The subcontractor exception to the "your-work" exclusion restored coverage to claims that would otherwise be excluded as property damage to the insured's own work. See O'Shaughnessy, 543 N.W.2d at 104 ("[W]e must conclude that the exception restores coverage to a subcategory of 'your work.'"). Although the subcontractor exception is inapplicable here (having been deleted from the Policy), cases interpreting it remain relevant. In one, this Court found a fact issue as to whether a party was a subcontractor (and whether the exception was thus triggered), but there was no dispute that the damages at issue—cracks and "popouts" in a concrete floor that was the subject of a construction contract—fell under the "your work" exclusion. Web Constr., 2007 WL 4230751, at *8. In another, the subcontractor exception potentially restored coverage to numerous claimed construction defects including cracked walls and floors, improper framing, and defective brick work, but the court assumed that the "your-work" exclusion encompassed these claims. See O'Shaughnessy, 543 N.W.2d at 100–01, 104–05.

---

[5] The "your-work" exclusion in Corn Plus was identical to the exclusion in Grinnell's Policy prior to the endorsement—that is, it included the subcontractor exception which is no longer present in Grinnell's Policy. See id. at 988. However, the allegedly-faulty work at issue in Corn Plus was done by the general contractor itself, so the subcontractor exception to the exclusion did not factor into the analysis. See id. at 983.

8

Just like the "work-performed" and "your-work" exclusions interpreted in prior cases, the instant Policy excludes coverage for damage to property that was the subject of the insured's construction contract caused by construction defects or faulty workmanship. The Durans' claims all arise out of or involve damage to Wollak's own work. Accordingly, all come within the Policy's definition of "your work" and its exclusion for "damage to your work." Since there is no longer a subcontractor exception (or any other exception) in the exclusion, the inquiry ends here.

Rather than acknowledging this consistent interpretation of the "your-work" exclusion and its predecessor, Wollak argues that the exclusion does not apply because the presence of its defective work caused property damage not just to the work itself, but to the <u>larger</u> property (the Durans' entire lot).[6] Wollak is correct that if defective work causes accidental damage to property other than the work itself, the "your-work" exclusion does not apply. For example, defective wiring that causes fire damage to an already-existing building would be covered "property damage" because the damage is an "accidental result of defective workmanship" and causes harm to other property (the building), not just the insured's work (the wiring itself). See O'Shaughnessy, 543 N.W.2d at 105 (discussing an example from industry commentators).

To support its position, Wollak relies solely on Hauenstein v. Saint Paul-Mercury Indemnity Co., 65 N.W.2d 122 (Minn. 1954), in which use of defective plaster on the walls and ceilings of a building was determined to constitute property damage to the

---

[6] Wollak ironically finds itself in the position of arguing that its own work was so defective that its very presence damaged the Durans' property—it argues this for the sole purpose of avoiding the costs of its allegedly defective work.

9

larger property—the building—because it reduced the building's value. This Court is not persuaded by this analogy. The insured in <u>Hauenstein</u> was a plaster distributor that supplied plaster for other contractors' use. <u>Id.</u> at 124. The plaster was applied to an already-existing building (which was not itself Hauenstein's work) and caused damage to the building. <u>Id.</u> In contrast, Wollak contracted to build the Durans' entire home. Any deficiencies in its construction of the home did not cause damage to already-existing property as in <u>Hauenstein</u> because the entire building was Wollak's own work.

Wollak argues, however, that defects in its work damaged not only the house but also the Durans' lot by diminishing its value. This argument lacks legal or factual support. Diminution in value does not constitute "property damage" as the term is defined in Grinnell's Policy. <u>See</u> <u>Federated Mut. Ins. Co. v. Concrete Units, Inc.</u>, 363 N.W.2d 751, 756 (Minn. 1985) (holding that diminution in value is <u>not</u> "property damage," and finding the lower court's reliance on <u>Hauenstein</u> misplaced because the definition of that term had changed significantly since <u>Hauenstein</u> was decided in 1954).[7] Moreover, even if there were a legal basis for arguing that diminution in value is "property damage," the facts here fail to show any diminution. The home's value may indeed have been lower than the Durans anticipated due to construction defects, but it was almost certainly worth more than no home on the lot at all. Moreover, the Durans'

---

[7] The policy in <u>Federated</u> defined "property damage" as:
> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

<u>Id.</u> at 754 (quoting the policy). Although this differs slightly from the definition in Grinnell's Policy, the substance of the two definitions is identical.

10

claims that Wollak failed to mark property lines, failed to fill in sink holes, failed to properly pour concrete for the patio, and failed to remove a fence also suggest no decrease in value. Even if each allegation were true, the lot was of no lesser value after Wollak completed the job than when it began.

All of the damages claimed by the Durans arose out of Wollak's faulty workmanship in performing its construction contract. While Wollak's defective work may give rise to liability, it did not cause damage to property other than the house that was itself the subject of the construction contract. Liability for an insured's own faulty workmanship is not the type of risk CGL coverage has traditionally protected against, and Grinnell's Policy expressly excludes it from coverage here.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that (1) Grinnell's Motion for Summary Judgment (Doc. No. 17) is **GRANTED**, and (2) Grinnell has no duty to defend or indemnify Wollak in the underlying state-court action.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 15, 2010               s/Richard H. Kyle
                                      RICHARD H. KYLE
                                      United States District Judge